Vivian H. FIKE and Robert Wilson,
Plaintiffs Below, Appellants,

v.

Thomas L. RUGER, Eris Marie Scott, as
Administratrix of the Estate of Virgil
Scott, Jr., Descomp, Inc., Data Con-
trols North, Inc., and Del–Chapel As-
sociates, Defendants Below, Appellees.

No. 604, 1999.

Supreme Court of Delaware.

Submitted: April 18, 2000.
Decided: May 4, 2000.
Rehearing Denied May 31, 2000.

Jeffrey S. Goddess, Rosenthal, Monhait,
Gross & Goddess, P.A., Wilmington, for
Appellants.

Jeoffrey L. Burtch (argued) and Gregory J. Weinig, Cooch and Taylor, Wilmington, for Appellees.

Before VEASEY, Chief Justice, WALSH, and HOLLAND, Justices.

PER CURIAM:

This is an appeal from a decision of the Court of Chancery granting summary judgment in favor of the defendants in an accounting action arising out of a financially unsuccessful joint venture. We agree with the Court of Chancery's determination that the plaintiffs' claims are barred, as a matter of law, by the equitable doctrine of laches. Accordingly, we affirm.

I

Del–Chapel Associates is a joint venture formed in 1979 to purchase, hold and develop certain commercial real estate. In 1998, after years of losses, the joint venture agreed to sell the property. Seeking to participate in the distribution of sale proceeds, Vivian H. Fike and Robert J. Wilson (collectively "Plaintiffs"), two minority members of the joint venture, filed a complaint in the Court of Chancery against their co-venturers and the joint venture, itself. The complaint asserts claims for an accounting and for declaratory and injunctive relief based on several loan agreements originating in 1981 and 1992 between the joint venture and certain of its members.

The Court of Chancery concluded that the claims related to the loans arose at the time the loans were made and that those claims are now barred by the three-year statute of limitations and laches. Thus, the court held that although Plaintiffs may have a right to an accounting in connection with the impending dissolution and winding up of the joint venture, they may not, in connection with that accounting, litigate the validity of the loan agreements. The court then entered judgment on the complaint in favor of the defendants based on Plaintiffs' earlier concession that there are

no remaining funds subject to an accounting. This appeal followed.

II

This Court reviews the grant of summary judgment *de novo*, both as to facts and the law, to determine whether the undisputed material facts entitle the movant to judgment as a matter of law. *See Williams v. Geier*, Del.Supr., 671 A.2d 1368, 1375 (1996). In such an inquiry, this Court views the facts of the record in the light most favorable to the non-moving party. *See id.* at 1375–76.

Laches is an equitable defense based on the theory that "a person with knowledge of an impending transaction should not be permitted to sit by in silence while positions are fundamentally changed by potential adversaries and the rights of third parties accrue." *Elster v. American Airlines*, Del. Ch., 128 A.2d 801, 805 (1957). The essential elements of laches are: (i) plaintiff must have knowledge of the claim and (ii) there must be prejudice to the defendant arising from an unreasonable delay by plaintiff in bringing the claim. *See Federal United Corp. v. Havender*, Del.Supr., 11 A.2d 331, 343 (1940).

The record clearly demonstrates that the joint venture's poor financial picture was well known to Plaintiffs by the mid- to late–1980s. In 1985, Fike asked for and received copies of the joint venture's tax returns for the years 1979 through 1984, financial statements for the years 1979 through 1983, and a copy of an unaudited profit/loss statement and balance sheet for the year ended December 31, 1984. In 1987, defendants Ruger and Scott sent Fike a letter, noting that interest was being credited to defendants Descomp, Inc. and Data Controls North, Inc. based on capital contributions they had made to the joint venture. The letter further noted that these ongoing interest payments had the potential to completely erode Fike's equity in the venture. Finally, by the late 1980s, tenants had begun to

depart, the buildings on the property began to fall into disrepair and the joint venture was forced to sell off portions of the property. Significantly, both Plaintiffs were on site at the property on a daily basis to witness this deteriorating state of affairs. The joint venture's financial troubles were also chronicled in a September 1987 newspaper article discussing, *inter alia*, $50,000 in unpaid real estate taxes.

The record further reflects that Fike at least had actual knowledge of the claims more than three years prior to bringing suit in the Court of Chancery. In June 1994, she filed an action in the United States District Court for the District of Delaware against Ruger, Scott, Descomp and Data Controls, alleging violations of the federal RICO statute and state law claims for breach of fiduciary duty. One of these state claims alleged that the defendants conspired among themselves to divert partnership funds to give the appearance that corporate partners Descomp and Data Controls were making major contributions to the partnership in the form of loans. Although the RICO-based claims were dismissed, the court suggested that Fike could re-file her state law claims in the appropriate court. Fike waited until November 19, 1998, however, more than three years later, to file the present action.

■ In applying laches, a plaintiff is chargeable with such knowledge of a claim as he or she might have obtained upon inquiry, provided the facts already known to that plaintiff were such as to put the duty of inquiry upon a person of ordinary intelligence. *See* 27A Am.Jur.2d *Equity* § 172 (1996). There can also be no dispute that Plaintiffs, both of whom were on site at the property on a daily basis, were placed on inquiry notice by the departing tenants, the deteriorating condition of the premises, and the sale of certain portions of the land. Nor can there be any dispute

that the 1987 newspaper article also placed Plaintiffs on inquiry notice. Accordingly, we find that Plaintiffs were on inquiry notice and/or possessed actual knowledge of their claims related to the loans since the mid- to late–1980s.

The defendants would be prejudiced in two ways by Plaintiffs' unreasonable delay in bringing these claims. First, Clifton Whittaker, the joint venture's long-time accountant, and defendant Scott, one of the joint venturers, died in 1997 and 1996, respectively. Both Scott and Whittaker would have been key witnesses in refuting Plaintiffs' claims. *See Cooch v. Grier*, 30 Del. Ch. 255, 59 A.2d 282, 287 (1948); *Skouras v. Admiralty Enterprises, Inc.*, Del. Ch., 386 A.2d 674, 682 (1978) (prejudice can be found where a party dies while the other party sits on its claim). Second, had Plaintiffs filed suit before 1992, defendants Ruger and Scott could have avoided significant personal loses by ceasing to lend additional money to the joint venture. Therefore, because Plaintiffs were on inquiry notice and/or possessed actual knowledge of their present claims and the defendants would be prejudiced by Plaintiffs' unreasonable delay in bringing these claims, the Court of Chancery properly granted summary judgment in favor of the defendants on the basis of laches.*

The decision of the Court of Chancery is affirmed.

---

* In so holding, this Court need not address the Court of Chancery's determination that Plaintiffs' claim is barred by the statute of limitations. Nor is it necessary for this Court to address the defendant's acquiescence argument that was raised for the first time on appeal as an alternative ground for affirmance.